POWER ELECTRIC COMPANY, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellant.

No. 12908.      Decided June 5, 1963.

*J. B. Fernández Badillo, Solicitor General,* and *Juan A. Faría, Assistant Solicitor General,* for appellant. *Alberto Picó* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

## JUDGMENT

This case solely involves a question of fact. As it appears from the record, plaintiff-appellee was introducing, together with the refrigeration equipment which it was selling in Puerto Rico, additional refrigeration units (sealed motors) which it kept in storage to replace those units which would become damaged while in possession of the clients during the guarantee period. On these additional units plaintiff paid the excise taxes levied by the Secretary of the Treasury, and said excise taxes are not in controversy. The damaged unit recovered by plaintiff was sent to the factory in the United States, where, generally, it was repaired and returned. These repaired and returned units were part of the additional units that plaintiff kept to replace those of the clients under guarantee. The units returned by the factory for replacement were invoiced at a lower price, which generally represented the cost for repair. On these replacement units plaintiff paid excise taxes on the basis of the lower price invoiced.

In the year 1954 the Secretary of the Treasury notified plaintiff of certain deficiencies in the payment of said excise taxes which consisted in the difference between the price invoiced and the higher price determined by the Secretary for new units for the general market. These deficiencies covered the years 1951 to 1954.

The trial court decided that the taxes in controversy referred to the units brought by plaintiff to replace the units damaged during the period of guarantee, and which plaintiff was bound to substitute free of cost with a replacement unit repaired by the factory. We believe that the evidence in the record undoubtedly supports its conclusion.

"Plaintiff:   Do we agree that the units are replacements?

Defendant:  Yes.

·Plaintiff:   Is there any other point on which we agree?

Defendant:  I propose that it be stipulated that that motor on which excise is levied was sent . . . that that motor on which excises are levied . . . that motor which replaced a damaged one, and that the one damaged was·sent to the United States. That they arrived . . . that originally a motor came with the refrigerator and the motor was damaged, a replacement motor came and the old one was returned. Let that be stipulated."

Aside from the foregoing statements, the rest of the evidence in the record shows that in effect, these units were used to replace damaged units under guarantee; the replacement was done free of cost to the client, and they were not used for the general market. It was likewise proved that plaintiff sustained the burden of the tax in litigation, and it had to be so, since the client did not pay for the unit replaced and, also, because it was an excise tax deficiency determined in 1954 covering from 1951, it being therefore improbable that·in 1954, when plaintiff paid said tax deficiency, it could have passed the same in relation to transactions made since 1951.

The judgment rendered on April 4, 1957 by the Superior Court, San Juan Part, sustaining the complaint for reimbursement of excise taxes will be affirmed.

It was so decreed and ordered by this Court as witnesses the signature of the Chief Justice.

(s) Luis Negrón Fernández
*Chief Justice*

I attest:

(s) Joaquín Berríos
*Acting Secretary*